IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                            Cr. No. 07-1166 MCA

JACK BEASLEY,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendant Jack Beasley's Opposed Motion to Withdraw Guilty Plea* [Doc. 200], filed September 11, 2008. The Court held a hearing on the motion on October 2, 2008. Having considered the parties' submissions, the relevant law, the arguments of counsel as set forth at the hearing, and otherwise being fully advised in the premises, the Court grants the motion.

## I. BACKGROUND

In the 1950s and 1960s, at a time when they were employed as oil camp workers in the Canyon Largo region near Bloomfield, New Mexico, Larry Moore and Orion Allen amassed a large collection (approximately 42 pots) of Navajo Grayware pottery (pots, vessels, and jars) that they removed from the area. The area where Canyon Largo is situated is in an area known as "checkerboard" for its mix of privately owned ranches, state public lands and federal pubic lands. Federal land composes approximately 75% to 80% of the land in the subject area. More importantly, the area from which the pots were taken is known as

the *Dinetah* region, an sacred area of land believed by the Navajo people to represent their ancestral home.

Robert Gallegos is a collector and dealer of Native American artifacts.  In the summer of 2002, he purchased pottery from the collections of Mr. Moore and Mr. Allen, paying Mr. Moore $10,200 for his pots and Mr. Allen $15,750 for his.  Defendant Jack Beasley brokered one of the sales, for which he received a "commission" of $1,450.  Mr. Beasley's first involvement with the subject pots was in 2002.

On June 13, 2007, the Grand Jury returned an Indictment charging Messrs. Gallegos and Beasley, and a third co-defendant, Peter L. Hester, with five counts of having violated the Archaeological Resources Protection Act ("ARPA"), 16 U.S.C. § 470ee(b) and (d). [Doc. 1].  The Indictment was superseded on February 27, 2008, [see Doc. 68],[1] and on February 28, 2008, Peter Hester entered a plea of guilty. [Docs. 73, 74].  On May 22, 2008, Mr. Beasley also entered a plea of guilty and a sentencing hearing was set for August 19, 2008. [Docs. 122, 123, 126].  Mr. Gallegos, however, proceeded to trial.  In addition to charging the essential elements of the crimes, the Government also included in the Indictment (although it did not need to do so) the description of each pot as "Navajo Grayware" pots. Mr. Moore and Mr. Allen, each approaching eighty years of age at the time of the trial,  were given immunity in exchange for their cooperation with the Government.

---

[1]  Both the Indictment and the Superseding Indictment also included a forfeiture allegation.

The jury trial of Robert Gallegos commenced June 10, 2008.  Evidence presented in the Gallegos trial indicated that the pots were taken from federal public lands. Defendant Gallegos' trial ended June 18, 2008, when the jury returned a verdict of "Not Guilty" as to Count 1 but was unable to reach a unanimous decision with respect to the remaining four counts. [See Doc. 160].  In its presentation of evidence as to the pot which was the subject of Count 1, the Government's own expert witness, a renowned  archaeologist, testified that the pot was not a Navajo Grayware pot, but was in fact a pot that derived from the *Gallina culture,* a culture which preceded the arrival of the Navajo people by approximately 1000 years.  Testimony presented at the Gallegos trial indicated that the pots which were the subject of Counts 2, 3, 4, and 5 were all Navajo Grayware pots.  The jury was unable to reach a verdict as to Counts 2, 3, 4, and 5 and by *Order* entered June 24, 2008, this Court declared a mistrial based on manifest necessity as to those counts and discharged the jury. [Doc. 164].

The retrial of Mr. Gallegos on Counts 2, 3, 4, and 5 that was scheduled to begin on August 25, 2008 was vacated upon the July 31, 2008 representation of Mr. Gallegos' attorneys (in which the Government concurred) that "the parties [were] pursuing an amicable settlement agreement in good faith which would resolve the indictment in its entirety and therefore dispose of any need . . . for any future trials." [Doc. 182].

Thereafter, on August 7, 2008, counsel for Mr. Beasley filed an *Unopposed Motion to Continue Sentencing*, explaining, among other things, that in light of the instructions the Court provided the jury at the Gallegos trial, counsel believed that he might have erroneously advised Mr. Beasley as to the essential elements of the offense and, therefore, there might

be grounds to move to withdraw his guilty plea. [Doc. 185 at 1-2].  Counsel also noted that he was awaiting the resolution of the negotiations between the Government and Mr. Gallegos, which he believed might "have some effect on Mr. Beasley's options of moving to withdraw his plea, negotiating an alternative resolution with the government or proceeding to sentencing." [Id. at 2].

On September 2, 2008, the Government, citing the outline of its agreement with Mr. Gallegos,  moved to dismiss with prejudice Counts 2, 3, 4, and 5 and the forfeiture allegation. [Doc. 196].  The Court granted the motion by *Order* entered September 3, 2008. [Doc. 196].

On September 11, 2008, counsel for Mr. Beasley filed *Defendant Jack Beasley's Opposed Motion to Withdraw Guilty Plea*, arguing that (1) his guilty plea was based upon a material misunderstanding of the law (*i.e.*, what, if anything, the Government was required to prove as to Mr. Beasley's knowledge that the charged archaeological resources had been removed from public lands) and (2) given the disposition of this matter with respect to Mr. Gallegos it would be "particularly unfair" to allow Mr. Beasley to suffer a felony conviction, especially where he played a "relatively minor role" in the events. [See generally Doc. 200].

## II. ANALYSIS

### A.    Whether the circumstances support allowing Mr. Beasley to withdraw his plea for any reason or no reason at all

Rule 11 of the Federal Rules of Criminal Procedure allows a defendant to withdraw a plea of guilty (1) *before* the Court accepts the plea, for any reason or no reason at all; or (2) *after* the Court accepts the plea, if "the defendant can show a fair and just reason for

requesting the withdrawal." Fed.R.Crim.P. 11(d)(1)(B).  It is accepted and established in the

Tenth Circuit that a Magistrate Judge is authorized under the "additional duties" clause of

the Magistrates Act, 28 U.S.C. § 636, to accept a guilty plea.  United States v. Ciapponi, 77

F.3d 1247, 1251 (10th Cir. 1996).  In Ciapponi, the Tenth Circuit "h[e]ld that, with a

defendant's *express consent*, the broad residuary 'additional duties' clause of the Magistrates

Act authorizes a magistrate judge to conduct a Rule 11 felony plea proceeding, and such does

not violate the defendant's constitutional rights."  Id. (emphasis added).  Even so,

> [t]he taking of a plea by a magistrate judge does not bind the
> district court to accept that plea.  Rather, the district court retains
> ultimate control over the plea proceedings, which are submitted
> to the court for its approval. . . . Moreover, district courts review
> plea proceedings on a de novo basis. . . .

United States v. Dees, 125 F.3d 261, 268 (5th Cir. 1997)[2]; cf. United States v. Benton, 523

F.3d 424, 429 (4th Cir. 2008) (though magistrate judge cannot bind *district court*, magistrate

judge does "possess the authority to bind *defendants* to their plea for the purposes of Rule

11, so long as district judges retain the authority to review the magistrate judge's actions de

novo." (emphasis added)).  Critically, before a court accepts a guilty plea, the defendant has

an absolute right to withdraw it.  Id. at 483.

---

[2] In a footnote, Dees cited Ciapponi for the proposition that "[e]ven though the
Magistrates Act does not expressly provide for de novo review of plea proceedings, the only
constitutional requirement is that it be available if the parties so request."  Dees, 125 F.3d at 268
n.7 (*citing* Ciapponi, 77 F.3d at 1251).

There is no question but that a Magistrate Judge has the right and authority to accept a plea of guilty, despite the protestations of Defendant to the contrary.[3]  A plea accepted unambiguously by the Magistrate Judge constitutes a valid acceptance under <u>Ciapponi</u>.  The only issue before the Court in this case is whether Magistrate Judge Robert H. Scott's expression of  his acceptance of the plea of guilty, at the change of plea hearing, was sufficiently clear so as to constitute a final acceptance.  I conclude that it was not, and the Defendant may with withdraw his plea of guilty "for any reason or no reason."

Mr. Beasley expressly consented to entering a plea of guilty to Counts 1, 2, 3, 4, and 5 of the Superseding Indictment before Judge Scott.  The *Consent to Appear Before United States Magistrate Judge in a Felony Case*, which is dated May 22, 2008 and signed by Mr. Beasley, his attorney, and Judge Scott, reads in full:

> The United States Magistrate Judge has explained to me the nature of the offense(s) with which I am charged and the maximum possible penalties which might be imposed if I plead guilty.  I have been informed of my right to the assistance of legal counsel and of my right to plead or go to trial, judgment and sentencing before a United States District Judge.
>
> **I HEREBY:  Waive (give up) my right to enter my plea before a United States District Judge and I consent to entering my plea, knowingly and**

---

[3]  Mr. Beasley suggests that a Magistrate Judge's authority is so narrowly limited such that he or she  can only  perform what might  be described as the mere clerical function of advising a defendant of his rights and permitting him only to enter his plea before a judicial officer, with final acceptance of the plea and final adjudication of guilt left solely to an Article III judge.  This interpretation of the authority of a Magistrate Judge in this situation is best described as a "stretch" and far-fetched.  Mr. Beasley's consent clearly encompassed the Magistrate Judge being able to accept a plea of guilty.

**voluntarily, before a United States Magistrate Judge.**

[Doc. 122 (emphasis in original)].  This *Consent* indicates Mr. Beasley's express consent to have his plea heard by the magistrate judge and to have it accepted by the magistrate judge who otherwise has authority to accept it.  See Benton, 523 F.3d at 431 (refusing to differentiate between plea colloquy and plea acceptance, as "the acceptance of a plea is merely the natural culmination of a plea colloquy.").

Judge Scott clearly understood his authority to accept Defendant's plea of guilty.  This is evidenced at the very start of the change of plea hearing when Judge Scott stated the following:  "Mr. Beasley, before the Court accepts a plea of guilty I want to make sure that you understand that you're now under oath."  [Doc. 206, at 2].  Notwithstanding Judge Scott's later statement during the plea colloquy that "[t]he plea of guilty is . . . accepted by the Court, Mr. Beasley, and you are judged guilty of the offense *subject to final approval of your plea* by your sentencing judge[,]" [see Doc. 122 at 8], a reasonable inference, given the unique circumstances and posture of this case, is that Judge Scott intended to make his acceptance conditional, subject to this Court's final approval.

At the change-of-plea hearing, Judge Scott specifically advised that "[t]he plea of guilty is . . . accepted by the Court, Mr. Beasley, and you are judged guilty of the offense *subject to final approval of your plea* by your sentencing judge." [Id. (emphasis added)].  Judge Scott expressly  informed Mr. Beasley that it was the plea—not the *plea agreement*—that required final approval by the Article III judge and, given the unique

7

circumstances of this case, it makes sense that he did so.  It is clear to this Court that Judge Scott may not have been entirely satisfied with the factual basis articulated by Mr. Beasley in the plea agreement and sought final review and approval from an Article III judge.[4]  This concern is further addressed below.

As previously explained, the defendants in this case were charged with having violated subsection (b) of the ARPA, which criminalizes the "*[t]rafficking* in archaeological resources the excavation or removal of which was wrongful under Federal law."  16 U.S.C. § 470ee(b) (emphasis added).  As explained more fully in Section II.B. below, this Court perceived an important distinction between subsection (b) and subsection (a), which criminalizes the "[u]nauthorized *excavation, removal*, damage, alteration, or defacement of archaeological resources. . . .located on public lands. . . ."  16 U.S.C. § 470ee(a) (emphasis added).  This distinction was, in the Court's view, sufficiently important to support instructing the jury in the Gallegos trial that, in order to obtain a conviction, the Government was required to prove beyond a reasonable doubt "[t]hat the defendant knew or should have known that [the charged archaeological resources] had been removed from public lands. . . ." [Doc. 148 at 8-11].[5]

---

[4]  It is suggested that Judge Scott's words were, at best, sufficiently ambiguous such that Mr. Beasley did not understand the proceedings or the consequences of the court's action at the plea hearing.  I reject this rationale.  Within the unique context of this case, Judge Scott said exactly what he intended to say.

[5]  The Court's reasoning for so instructing the jury is explained more fully in Section II.B.  It would be an understatement to say that the Government was not—and still is not—in agreement with the Court on this point.

What complicated matters and made this case unique, however, is that Larry Moore and Orion Allen, the two (uncharged) "pothunters" who actually removed the resources in question did so in the 1950s and 1960s, a half century ago and well before the advent of the Global Positioning System (GPS) that would allow them some 50 years later to return to the Canyon Largo region, a checkerboard area of private,  state public, and federal public lands, and locate exactly for investigating agents the precise locations from which they took the charged pots.  At the Gallegos trial, Orion Allen testified that he returned to the area in 2004 and, with the help of GPS technology, pinpointed the locations from which he picked up the pots.  The conduct charged in the *Superseding Indictment*, however, occurred in 2002.  That Mr. Beasley's *mens rea* at the relevant time is open to dispute is reflected by his Plea Agreement, agreed to and signed in 2008, which states: "I *now* know that some of the pots I helped Robert V. Gallegos purchase from Larry Moore and Orion Allen came from [public lands]." [Doc. 123 at 4 (emphasis added)].  Thus, given that Mr. Beasley entered a guilty plea to conduct for which his Plea Agreement indicates he may have acquired the relevant state of mind *only after the fact and after being informed of the results of the GPA application done a half century later,* Judge Scott was correct to condition acceptance of the plea on this Court's final approval of it, since the above-quoted language renders questionable the entire factual basis underlying the plea.  For these reasons, the Court concludes that, given the singular nature of the case, Judge Scott did not accept Mr. Beasley's guilty plea on May 22, 2008.  Accordingly, Mr. Beasley may now withdraw his plea without stating a reason.  See Fed.R.Crim.P. 11(d)(1).

### B.    Whether Mr. Beasley has demonstrated a fair and just reason supporting the withdrawal of his plea

Because I have determined that Judge Scott did not unequivocally accept Mr. Beasley's plea of guilty, it is not necessary that I reach the issue of whether Mr. Beasley has demonstrated a fair and just reason supporting the withdrawal of his plea.  However, because the grounds proffered by Defendant in support of his Motion To Withdraw Guilty Plea are stated in the alternative, I will address that issue in order that all questions raised in this unique case are clarified.  I conclude that Mr. Beasley has not made the requisite showing.

In <u>United States v. Gordon</u>, the Tenth Circuit listed the following factors as those that should be considered when assessing whether a defendant has met his burden of showing a fair and just reason for withdrawing his guilty plea:

> (1) whether the defendant has asserted his innocence;
>
> (2) prejudice to the Government;
>
> (3) delay in filing defendant's motion;
>
> (4) inconvenience to the Court;
>
> (5) defendant's assistance of counsel;
>
> (6) whether the plea is knowing and voluntary; and
>
> (7) waste of judicial resources.

<u>United States v. Gordon</u>, 4 F.3d 1567, 1572 (10th Cir. 1993).

In the motion to withdraw here, counsel does not assert Mr. Beasley's innocence as much as he laments his own "misadvi[ce to] Mr. Beasley as to which party bore the burden

of proof on [the] critical element" of what the defendants knew or should have known as to the archaeological resources' removal from public lands, [see Doc. 200 at 3], thus implicating Gordon factors (5) and (6).[6]  As counsel explains:

> In its jury instructions, the Court placed the burden on the government to prove that the defendant, "knew or should have known that the pots had been removed from public lands."  This was the single point of contention in Mr. Gallegos' defense and was, in fact, the issue upon which the defendant's decision to plead guilty rested. As it turned out in Mr. Gallegos' trial, the government could not satisfactorily meet that burden for all jurors. Undersigned counsel misadvised Mr. Beasley as to which party bore the burden of proof on this critical element. This misadvice was a key factor upon which Mr. Beasley based his decision to enter a plea of guilty. The defendant never admitted in his statement to investigators or in his plea that he knew or should have known, at the time of the alleged criminal transaction, that the pots were removed from public lands. Thus, the defendant's misunderstanding of the law materially affected his plea decision.

[Id. (internal citation omitted)].

At the Gallegos trial, the Court instructed the jury, in pertinent part, that the Government was required to prove beyond a reasonable doubt "[t]hat the defendant knew or should have known that [the charged archaeological resources] had been removed from public lands. . . ." [Doc. 148 at 8-11].  At first blush, this instruction might appear to run counter to established Tenth Circuit precedent that the Government need not prove a defendant knew that removed artifacts were on public lands in order to secure an ARPA

---

[6]  In this regard, the Court finds that factor (6) is implicated only insomuch as Mr. Beasley argues that his plea was not knowingly made.  There has been no allegation or even suggestion that the plea was not voluntarily made and, in any event, "the fact that a plea was voluntary . . . cannot count against a defendant's attempt to withdraw it prior to sentencing, unless the defendant's only asserted 'fair and just reason' for withdrawing the plea is lack of voluntariness itself."  United States v. Garcia, 401 F.3d 1008, 1012 (9th Cir. 2005).

conviction.  See United States v. Quarrell, 310 F.3d 664, 674 (10th Cir. 2002).  However, as

explained more fully in the Court's *Memorandum Opinion and Order* of May 30, 2008,[7]

incorporated herein by reference and attached as an Appendix to this *Memorandum Opinion*

*and Order*, this Court found significant the fact that the Quarrell defendants had been

charged under subsection (a) of the ARPA, which criminalizes the "[u]nauthorized

excavation, removal, damage, alteration, or defacement of archaeological resources. . .

.located on public lands[,]" whereas Messrs. Gallegos, Hester, and Beasley had been charged

under subsection (b), which criminalizes the "[t]rafficking in archaeological resources the

excavation or removal of which was wrongful under Federal law."  16 U.S.C. § 470ee(a), (b).

Having carefully considered Quarrell, subsections (a) and (b), and other relevant authority,

> this Court deem[ed] subsections (a) and (b) sufficiently
> dissimilar to support distinguishing Quarrell under the unique
> circumstances presented here.   Consequently, the Court
> conclude[d] that, *as a buyer/seller and not the actual remover*
> *of the pottery in question*, Mr. Gallegos' situation [was] more
> akin to the facts of Staples[8] and X-Citement Video,[9] because
> to eliminate the requirement that the Government prove that he
> knew or should have known that he was purchasing illegally
> removed pottery would "criminalize a broad range of apparently
> innocent conduct," Staples, 511 U.S. at 610, specifically, buying
> and selling pottery readily available on the open market.

[Doc. 134 at 7].

_____

[7] That *Memorandum Opinion and Order* denied *The United States' Motion in Limine*
*Asking that Defendant, Robert Gallegos, Not Be Allowed To Present Evidence, or Argue As A*
*Defense, That He Did Not Know The Navajo Grayware Pots He Purchased Came From Public*
*Land* [Doc. 105].

[8] Staples v. United States, 511 U.S. 600 (1994).

[9] United States v. X-Citement Video, Inc., 513 U.S. 64 (1994).

To the extent that Mr. Beasley's challenge to his guilty plea is based on ineffective assistance of counsel, he must satisfy the two-part test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), showing both that (1) counsel's performance was deficient, and (2) this deficiency prejudiced his defense.  United States v. Hamilton, 510 F.3d 1209, 1216 (10th Cir. 2007).  Mr. Beasley could satisfy the first Strickland element by showing that counsel's "conduct did not fall within the wide range of competence demanded of attorneys in criminal cases."  United States v. Carr, 80 F.3d 413, 417 (10th Cir. 1996).  However, this Court "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance. . . ."  Strickland, 466 U.S. at 689.

The Tenth Circuit has held that "[t]he Sixth Amendment does not require counsel for a criminal defendant to be clairvoyant."  United States v. Harms, 371 F.3d 1208, 1212 (10th Cir. 2004) (failure to advise defendant of potential distinction between actual and virtual child pornography before advising him to plead guilty to receipt of child pornography transported in interstate commerce by computer did not amount to ineffective assistance of counsel where controlling law subsequently changed).  Moreover, "counsel's performance is not deficient by failing to predict future developments in the law."  Id. (quoting Brown v. United States, 311 F.3d 875, 878 (8th Cir. 2002)).  Indeed, it is because the Strickland test focuses on the performance of counsel based upon his perspective at the time, see Strickland, 466 U.S. at 689, that ignorance of well-defined legal principles is nearly inexcusable, whereas "'the rule that an attorney is not liable for an error of judgment on an unsettled proposition of law is universally recognized. . . .'"  Smith v. Singletary, 170 F.3d 1051, 1054

(11th Cir. 1999) (*quoting* 2 RONALD E. MALLEN & JEFFREY M. SMITH, LEGAL MALPRACTICE § 17.1 at 497 (4th ed.1996)).[10]   Accordingly, counsel's failure in this case to predict the manner in which the Court would instruct the jury in a co-defendant's trial, on a point of law that can best be described as unsettled and untested, does not place counsel's conduct outside "the wide range of reasonable professional assistance. . . ."  Strickland, 466 U.S. at 689.

Having determined that Gordon factors (5) and (6) weigh against Mr. Beasley,[11] the Court concludes that he has failed to establish a fair and just reason supporting the withdrawal of his guilty plea.  Absent such a showing, the Court need not reach the remaining factors.  See Hamilton, 510 F.3d at 1217 (explaining that the Court need not address prejudice to government, timing of defendant's motion, inconvenience to the Court, or waste of judicial resources "unless the defendant establishes a fair and just reason for

---

[10]  Mallen and Smith continue:

> [T]he reality [is] that law is not an exact science. What an attorney thinks the law is today may not be what a court decides tomorrow. A court once commented that, for an attorney to be able to guarantee that no judge would ever disagree with his judgment, the attorney's library would have to be equipped with a crystal ball. Subjecting attorneys to liability simply because a judge disagrees can be unfair. After all, judges are lawyers who have the additional responsibility of declaring the law.  Even judges concede that the infallibility of their opinions depends solely on the finality of their rulings.

MALLEN & SMITH, 2 LEGAL MALPRACTICE § 19.1 (2008 ed.) (footnotes omitted).

[11]  As previously stated, this Court does not understand Mr. Beasley to be asserting his innocence; he therefore has failed to carry his burden with respect to Gordon factor (1).

withdrawing his guilty plea.").[12]

## III. CONCLUSION

On the basis of the foregoing, *Defendant Jack Beasley's Opposed Motion to Withdraw Guilty Plea* will be granted on the ground that, given the unique and singular nature of this case, the Magistrate Judge did not unequivocally accept Mr. Beasley's plea of guilty, entered May 22, 2008. For that reason, Mr. Beasley has the absolute right to withdraw his without stating a reason. See Fed.R.Crim.P. 11(d)(1).

**IT IS, THEREFORE, ORDERED** that *Defendant Jack Beasley's Opposed Motion to Withdraw Guilty Plea* [Doc. 200] is **GRANTED;**

**IT IS FURTHER ORDERED** that this case be reinstated on the next trial docket.

**SO ORDERED** this 28th day of October, 2008, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge

_____

[12] If the Court were to address the remaining factors, however, the Court would find that to allow the withdrawal of Mr. Beasley's plea would result in "inevitable" prejudice to the Government, inconvenience to the Court, and a waste of judicial resources. See Carr, 80 F.3d at 420-421. Additionally, it is undisputed that Mr. Beasley delayed the filing of this motion pending the Government's post-trial negotiations with Robert Gallegos, as that "resolution [might] have [had] some effect on Mr. Beasley's options of moving to withdraw his plea, negotiating an alternative resolution with the government or proceeding to sentencing." [Doc. 185 at 2]. Thus, if the Court were to address the factors it need not reach, the Court would conclude that these factors weigh against allowing Mr. Beasley to withdraw his guilty plea.